In the

# United States Court of Appeals
## For the Seventh Circuit

No. 12-1699

MERDELIN V. JOHNSON,

*Plaintiff-Appellant*,

*v.*

GENERAL BOARD OF PENSION &
HEALTH BENEFITS OF THE UNITED
METHODIST CHURCH and ALEXANDRA
JUNG,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 02 C 5221 — **Charles R. Norgle**, *Judge.*

ARGUED SEPTEMBER 24, 2013 — DECIDED OCTOBER 21, 2013

Before POSNER, TINDER, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Plaintiff Merdelin Johnson sued
her former employer, the General Board of Pension & Health
Benefits of the United Methodist Church ("General Board"),
alleging race discrimination and retaliation in violation of Title
VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981, as well

as sexual harassment in violation of Title VII. On her §1981 claims, Johnson also named as a defendant Alexandra Jung, a General Board employee involved in selecting candidates for open positions. Most of Johnson's claims were dismissed on defendants' motion for summary judgment. Two remaining claims for retaliation were then tried to a jury, which returned a verdict for the defendants. Johnson has appealed the grant of partial summary judgment and the denial of her post-trial motions for a new trial and for relief from judgment.

We affirm. The district court properly granted summary judgment on most claims. In the trial of the two remaining claims, we see no abuse of discretion in the many evidentiary rulings that Johnson challenges. Johnson has raised several procedural and substantive objections to the final jury instructions. The district court failed to comply with Federal Rule of Civil Procedure 51(b), which requires the court to decide the content of final jury instructions and give the parties an opportunity to object before the instructions and final arguments are delivered. That procedural error was ultimately harmless, though. We find no substantive error in the instructions actually given, and Johnson has not shown that she was otherwise prejudiced by the procedural error. We therefore affirm the judgment for defendants.

I.   *Factual and Procedural Background*

Defendant General Board administers pensions, health benefits, and other employee benefits for employees of the United Methodist Church. The General Board is headquartered in Evanston, Illinois. Plaintiff Johnson worked for the General Board as a team member from 1999 to 2004, assigned to the

benefits determination team. Defendant Jung was the director of benefits administration during that time.

Johnson filed her first discrimination complaint with the General Board's human resources office in the summer of 1999. During the years she worked for the General Board, she unsuccessfully sought four promotions that are the principal focus of her case. First, in March 2001, Johnson applied for a promotion to team leader, but the hiring officials, including defendant Jung, selected another candidate. Johnson testified that a hiring official told her that her tendency to complain about discrimination might have contributed to the decision not to promote her. Johnson filed a charge with the Equal Employment Opportunity Commission in December 2001 based on these events. Next, in August 2002, Johnson applied for a promotion to plan sponsor manager, but again another candidate was selected. Johnson claims that her application was timely, while the General Board maintains that the position had been filled by the time she applied. In December 2002, Johnson considered applying for another promotion to plan sponsor manager, but she did not actually apply. Johnson claims that Jung discouraged her from applying. Finally, Johnson applied for a promotion to team leader in January 2003, but was again unsuccessful. She then filed two EEOC charges alleging discrimination and retaliation.

Johnson's employment with the General Board ended in March 2004, when the General Board learned that Johnson had been recording her conversations with co-workers without their consent. The General Board concluded that Johnson's behavior violated the General Board's policies and the Illinois Eavesdropping Act, 720 ILCS 5/14 *et seq.*, and decided to

terminate her. After her termination, Johnson filed a final EEOC charge alleging that she was sexually harassed in January 2004, when a team leader showed her a supposedly humorous video on his computer that included a brief display of male nudity.

Johnson filed two lawsuits that have been consolidated into this one. She alleged that the General Board discriminated and retaliated against her based on her race and national origin when it failed to promote her on the four occasions listed above and when it terminated her employment. She also claimed that Jung individually had discriminated against her in failing to promote her on those four occasions. (Section 1981 permits suits against individual agents of an employer, while Title VII does not. See *Smith v. Bray*, 681 F.3d 888, 896 n.2 (7th Cir. 2012).) Johnson also alleged sexual harassment based on the video incident.

The district court granted summary judgment for the General Board on all of Johnson's discrimination claims, as well as on her termination-related claims and her sexual harassment claim. The court also granted summary judgment for the General Board on Johnson's retaliation claims regarding the August 2002 and December 2002 promotions because she had not actually submitted timely applications. Jung was dismissed as a defendant because no claims against her remained in the lawsuit.

The summary judgment decision left for trial only Johnson's retaliation claims against the General Board for denial of the March 2001 and January 2003 promotions. The jury returned a verdict for the General Board on both claims.

Johnson filed a post-trial motion seeking a new trial and other relief and a later motion for relief from judgment. The district court denied both. Johnson now appeals the district court's grant of partial summary judgment and the denial of her post-trial motions.

II. *Summary Judgment*

Johnson challenges the district court's grant of summary judgment on her discrimination claims, her retaliation claims regarding the August 2002 and December 2002 promotions, her termination-related claims, and her sexual harassment claim. We review *de novo* the district court's grant of summary judgment, construing all evidence in the light most favorable to Johnson and drawing all reasonable inferences in her favor. *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 449 (7th Cir. 2013). Summary judgment is appropriate when no genuine issue of material fact exists and a party is entitled to judgment as a matter of law. *Hester v. Indiana State Dep't of Health*, 726 F.3d 942, 946 (7th Cir. 2013).

A plaintiff can establish discrimination or retaliation in violation of Title VII using either the direct or indirect method of proof.[1] The direct method requires that the plaintiff provide direct or circumstantial evidence of the employer's discriminatory animus or retaliatory behavior. *Coleman v. Donahoe*,

---

[1] Several recent decisions of this court have questioned the utility of having two separate methods of proof, suggesting that the time has come to collapse the various tests into one. See *Coleman v. Donahoe*, 667 F.3d 835, 863 (7th Cir. 2012) (Wood, J., concurring); *Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 680 (7th Cir. 2012). In this case, Johnson has no direct evidence that any decision was motivated by her race, so the distinction makes no difference here.

667 F.3d 835, 845 (7th Cir. 2012); *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 559 (7th Cir. 2004). The indirect method, by contrast, requires the plaintiff to follow the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). Under the *McDonnell Douglas* framework, after the plaintiff makes a prima facie case of discrimination or retaliation, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for its action. Doing so shifts the burden back to the plaintiff to show that the employer's proffered reason is pretext, which then permits an inference that the employer's real reason was unlawful. *Id.*; *Coleman*, 667 F.3d at 845; *Nichols v. Southern Illinois Univ.-Edwardsville*, 510 F.3d 772, 785 (7th Cir. 2007). The substantive standards and methods that apply to Title VII also apply to 42 U.S.C. § 1981. *Smith*, 681 F.3d at 896.

Johnson has offered no direct evidence that her race or national origin motivated any decision by the General Board. (In fact, on appeal she has not argued her national origin claims at all.) The district court correctly held that Johnson had not offered circumstantial evidence that would have allowed a reasonable jury to find racially discriminatory intent as to any of her claims, whether under the indirect method or the more flexible "convincing mosaic" method of proof. Summary judgment was also proper on Johnson's sexual harassment claim because the single incident that Johnson described was not severe enough to support liability under Title VII.

A.  *The August 2002 and December 2002 Promotions*

The district court granted summary judgment to the General Board on all of Johnson's claims regarding the August

2002 and December 2002 promotions because Johnson did not file a timely application to either position, meaning that she could not make a prima facie case of either discrimination or retaliation under Title VII. "[T]he prima facie case for a failure to promote claim … requires that the plaintiff show … she applied for and was qualified for the position sought [and] she was rejected for that position." *Fischer v. Avanade, Inc.*, 519 F.3d 393, 402 (7th Cir. 2008) (internal quotation omitted); see also *Hudson*, 375 F.3d at 558–59 (affirming summary judgment for employer where employee did not apply for the position at issue). Johnson admits that she did not apply for the December 2002 position (allegedly because she was discouraged from doing so), but asserts that the timeliness of her application to the August 2002 position was in dispute. We agree with the district court, however, that the record shows beyond reasonable dispute that the position had been filled before August 30, 2002, when Johnson submitted her application. Regardless of the method of proof used, the defendants were entitled to summary judgment on claims that Johnson was denied promotions for which she did not apply.

B. *Discrimination Claims for the March 2001 and January 2003 Promotions*

Johnson's claims of discrimination based on the March 2001 and January 2003 promotions were also properly resolved by summary judgment. Johnson presented no direct evidence of discrimination in the district court and has not pursued such a theory on appeal. For a failure-to-promote claim, the indirect method of proof required Johnson to offer evidence that: (1) she was a member of a protected class; (2) she applied for and was qualified for the position sought; (3) she was rejected for

the position; and (4) the employer promoted someone outside the protected group who was not better qualified than the plaintiff. *Grayson v. City of Chicago*, 317 F.3d 745, 748 (7th Cir. 2003).

We can bypass the question of a prima facie case here, as the district court did. Even if Johnson had sufficient evidence for a prima facie case of discrimination on these two promotions, defendants were entitled to summary judgment. The defendants articulated non-discriminatory reasons for the decisions not to promote Johnson. The General Board and Jung offered evidence that Johnson was not selected for the positions because the hiring officials believed she lacked the leadership and interpersonal skills necessary for the job. Johnson has not presented evidence to counter that explanation and permit a finding of pretext, so summary judgment was properly granted. Jung was named as a defendant only on Johnson's race discrimination claims under §1981, so dismissing Jung from the lawsuit was also proper.

C. *Termination*

Defendants were also entitled to summary judgment on Johnson's claims of discrimination and retaliation based on her firing in March 2004. Again, Johnson has no direct evidence of racially discriminatory intent, and even if we assume that Johnson could establish a prima facie case, there is no evidence that the stated reason for her termination was a pretext. The General Board asserts that it fired Johnson because she recorded conversations with co-workers without obtaining their consent, in violation of the General Board's policies and Illinois law. Johnson argues that the Board's explanation is a

pretext because the Board recorded some employees' phone calls without their consent for several months. Johnson did not make this argument in opposing summary judgment in the district court, so it is waived on appeal. *Pond v. Michelin North America, Inc.*, 183 F.3d 592, 597 (7th Cir. 1999). However, even if that were not the case, the General Board's own recording does not suggest that its explanation for terminating Johnson was pretext. The undisputed evidence shows that the General Board's recording was the accidental result of a computer glitch that took some time to sort out. This conduct is simply not analogous to Johnson's clandestine and intentional recording of her conversations with co-workers. Defendants were therefore entitled to summary judgment on Johnson's termination claims.

D.  *Sexual Harassment*

Johnson's sexual harassment claim based on seeing one video with nudity on a co-worker's computer was also properly resolved on summary judgment. The sole alleged incident was not severe enough to support a claim under Title VII. Although a single instance of behavior can give rise to liability if it is sufficiently severe, past cases finding liability for a single incident have involved facts much more severe than those claimed by Johnson. See, *e.g.*, *Lapka v. Chertoff*, 517 F.3d 974, 983–84 (7th Cir. 2008) (single instance of sexual assault by a co-worker was sufficiently severe to constitute a hostile work environment: "We have held that assaults within the workplace create an objectively hostile work environment for an employee even when they are isolated."); *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 808–09 (7th Cir. 2000) (non-consensual violent kiss and attempted unfastening of plaintiff's bra

were acts sufficiently severe to create a hostile work environment; the incident presented "overtones of an attempted sexual assault"). Showing Johnson one video containing a momentary display of male nudity does not come close to reaching the required level of severity for a sexual harassment claim. See, *e.g.*, *Cowan v. Prudential Ins. Co. of America*, 141 F.3d 751, 757-58 (7th Cir. 1998) (affirming summary judgment for employer; circulating a safe-sex cartoon and a photograph of a co-worker with a stripper was not severe enough to support liability). Therefore, summary judgment was properly granted on Johnson's claim for sexual harassment.

III.   *Motion for New Trial*

The district court denied defendants' motion for summary judgment on Johnson's claims for retaliation in the denials of promotions she sought in March 2001 and January 2003. Johnson had submitted her own testimony that a General Board hiring official told her that her repeated claims of discrimination might have played a role in the decisions not to promote her. The district court found that evidence sufficient to present a genuine issue of fact as to retaliatory intent, so those two claims were tried to a jury, with Johnson representing herself.[2]

---

[2] Johnson was represented by several teams of court-recruited attorneys during the course of this litigation, two of which withdrew at her request. Johnson filed two motions for appointment of counsel after her last court-recruited attorneys withdrew in September 2004. Both motions were denied. Having already found eight attorneys to represent Johnson, the district court was not obliged to seek a ninth. The denials of the motions were not abuses of discretion.

The jury ruled for defendants on the two retaliation claims. Johnson then filed a timely motion for a new trial, which the district court denied. A motion for a new trial is committed to the sound discretion of the judge who presided over the trial, so we review the denial of a motion for a new trial for "a clear abuse of discretion." *Mathur v. Bd. of Trustees of Southern Illinois Univ.*, 207 F.3d 938, 944 (7th Cir. 2000). A new trial is appropriate where the verdict is against the clear weight of the evidence or the trial was not fair to the moving party, but again, we defer to the judgment of the trial judge. *Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011) (affirming denial of new trial); *Gaddy v. Abex Corp.*, 884 F.2d 312, 315 (7th Cir. 1989) (affirming grant of new trial).[3]

Johnson argues that a new trial is warranted under Rule 59(a)(1) on many grounds, including that the jury's verdict was against the clear weight of the evidence, that a variety of evidentiary rulings were erroneous, and that there were errors in the jury instructions. None of her arguments require a new trial, although there was an error, ultimately harmless, in the procedures used to decide the jury instructions.

---

[3] Johnson's motion also sought judgment as a matter of law under Rule 50, but that was a non-starter. The procedural problem was that she had not moved for judgment as a matter of law before the case was submitted to the jury. The substantive problem was that the conflicting evidence meant that the retaliation claims involved disputed issues of fact that had to be decided by the jury, not as a matter of law, as shown by our discussion below of the weight of evidence.

A.  *Weight of the Evidence*

The jury's verdict was not against the clear weight of the evidence, so denial of a new trial on that basis was not an abuse of discretion. The evidence was in conflict about the reasons Johnson was not promoted. No matter how sincerely Johnson feels she was mistreated, the evidence presented genuine issues about the General Board's motives that the jury had to resolve. There was ample evidence supporting a finding that Johnson was not promoted because of concerns about her interpersonal and leadership skills and that her earlier discrimination complaints did not factor into those decisions.

Johnson argues that she is entitled to a new trial because the General Board's witnesses perjured themselves. It is not at all unusual for the losing party to believe that the other side's witnesses were not honest. Johnson attempted to impeach those witnesses at trial. Resolving the alleged discrepancies between their deposition testimony and trial testimony was the province of the jury, and its decision does not require a new trial. See *Latino v. Kaizer*, 58 F.3d 310, 317 (7th Cir. 1995) (reversing grant of new trial where the allegedly perjurious testimony was challenged at trial, because "the credibility of witnesses is peculiarly for the jury") (internal quotation omitted).

B.  *Evidentiary Decisions*

On appeal Johnson also argues that the district court erred in eleven decisions to admit or exclude evidence, which she contends require a new trial. We review the district court's evidentiary rulings for abuse of discretion, granting a new trial only if there was an abuse of discretion that affected a party's

substantial rights. *Mason v. Southern Illinois Univ. at Carbondale*, 233 F.3d 1036, 1042–43 (7th Cir. 2000). None of the challenged evidentiary rulings call for a new trial.

First, evidence that the General Board's system for recording customer service calls sometimes recorded employees' personal calls because of a programming glitch was not relevant to Johnson's retaliation claim. Johnson was not singled out for recording, and the potential for confusion and distraction from the central issues of the case was clear. The district court did not abuse its discretion by excluding the call recording evidence.

Excluding Johnson's written evaluations of her own performance as hearsay was also not an abuse of discretion. Contrary to Johnson's contentions, the evaluations were not business records because they were not created or verified by the General Board. See *United States v. Santos*, 201 F.3d 953, 963 (7th Cir. 2000) (finding error in admitting as business records documents that the business in question had received without verifying or relying upon them). The same is true of co-worker and customer comments about Johnson's job performance. See *id.* Johnson's other evidentiary challenges were raised in a conclusory or underdeveloped manner, so we do not discuss them here. See, *e.g.*, *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) (arguments may be waived on appeal if they are "underdeveloped, conclusory, or unsupported by law"). None of the challenged evidentiary decisions, either individually or taken together, warrant a new trial.

C.  *Jury Instructions*

Johnson raises both procedural and substantive challenges to the district court's jury instructions. Procedurally, she claims that she was not provided with an opportunity to read the final instructions and to object to them before they were given to the jury. Substantively, she argues that the instructions were erroneous and were too generous to the General Board, prejudicing her and requiring a new trial. Although the failure to provide Johnson with a timely opportunity to read and object to the final jury instructions was error, she has made no showing of prejudice, so the error was harmless. We also find no error in the challenged jury instructions, which accurately stated the law.

1.  *Rule 51(b) Procedural Error*

Johnson argues first that the court did not provide her with an opportunity to read and object to the final jury instructions before they were provided to the jury. Federal Rule of Civil Procedure 51(b)(1) requires the trial court to "inform the parties of its proposed instructions and proposed action on the requests before instructing the jury and before final jury arguments." The court then "must give the parties an opportunity to object on the record and out of the jury's hearing before the instructions and arguments are delivered." Fed. R. Civ. P. 51(b)(2).

The record here does not show that the district court complied with either Rule 51(b)(1) or (b)(2). The parties had agreed on some jury instructions and included them as part of their Joint Amended Final Pretrial Order. They had also disagreed on many others. The final instructions actually given

by the court included some of the General Board's proposed instructions from the Amended Final Pretrial Order, to which Johnson had objected. The final instructions also included supplemental instructions that were submitted by the General Board after its closing argument and just before Johnson gave the rebuttal portion of her closing argument.

Our review of the record does not indicate that the court held a jury instruction conference before the final jury instructions were given to the jury. Johnson made her objections to the jury instructions immediately after the instructions were given, explaining that she had not had an opportunity to read them or state objections. Tr. 875. The court overruled the objection, saying that the instructions adequately stated the law, but not saying that the objections came too late. Tr. 876.[4]

The failure to comply with Rule 51(b) put the result of the trial at risk. Rule 51(b) prevents parties from being surprised by the phrasing or content of jury instructions. Knowing what the jury instructions will say allows parties to frame their closing arguments so that they dovetail with the instructions, making their claims easier to understand and probably more persuasive. See *United States v. Carrillo*, 269 F.3d 761, 768 (7th Cir. 2001) (parallel requirement in Fed. R. Crim. P. 30 was violated, but error was harmless because "this is not a case in which defense counsel were forced to present their closing

---

[4] The General Board contends that Johnson waived the claimed substantive errors by failing to make timely objections to the jury instructions, as required by Fed. R. Civ. P. 51(c). Because the district court did not provide Johnson with a timely opportunity to object before it instructed the jury, and because she objected promptly after the instructions were given, her objections were timely. There was no waiver.

arguments with no idea what the jury instructions were going to be"). The Rule 51(b) process also ensures that the district judge knows of any legal issues the parties have with the instructions and provides the judge a last opportunity to try to resolve them or to explain the judge's reasons for drafting the instructions as given. Rule 51(b) also provides an opportunity for the parties to object to any jury instruction they find improper, preserving the issue for review on appeal. See Fed. R. Civ. P. 51(c)(2).

In this case Johnson has not argued, let alone shown, that the Rule 51(b) error caused her independent prejudice, such as by leading her to give a closing argument that conflicted with the final instructions. In the absence of prejudice, we conclude that the procedural error was harmless.

### 2.  *Substance of the Jury Instructions*

We review jury instructions as a whole, "analyzing them deferentially to determine whether they accurately state the law and do not confuse the jury." *Rapold v. Baxter Int'l Inc.*, 718 F.3d 602, 609 (7th Cir. 2013). To obtain a new trial based on incorrect jury instructions, Johnson must establish that (1) the instructions did not accurately state the law, and (2) the error prejudiced her because the jury was likely to be misled or confused. *Id.* Johnson challenges the retaliation instruction, the adverse action instruction, and an instruction explaining the relationship between discrimination and retaliation claims. We find no error. The instructions as given stated the law accurately and were not overly confusing.

Contrary to Johnson's contentions, the retaliation instruction did not state that discrimination complaints must be in

writing in order to support an inference of retaliation. The instruction did state that decision-makers would need to have known about Johnson's discrimination complaints for Johnson to prevail, but that is an accurate statement of the law, absent a "cat's paw" theory of liability. See, *e.g.*, *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004) (employer "must have had actual knowledge of the complaints for her decisions to be retaliatory"); *Byrd v. Illinois Dep't of Public Health*, 423 F.3d 696, 709–10 (7th Cir. 2005) (cat's paw theory of retaliation does not require direct knowledge of discrimination complaints by the employer). Johnson did not pursue a cat's paw theory at trial and did not request a cat's paw instruction, so the retaliation instruction was accurate.

Johnson also claims that the instructions did not explain what constitutes a materially adverse action, but this is incorrect. The adverse action instruction was largely drawn from the Seventh Circuit Pattern Civil Jury Instructions, and accurately stated the law.

Johnson challenges next the district court's decision to provide a curative instruction to the jury. The instruction told the jury that Johnson's discrimination claims had already been resolved, and told the jury not to consider any alleged discrimination in determining whether the General Board had retaliated against Johnson. The district court found the instruction necessary because it had mistakenly referred to Johnson's discrimination claims during jury selection, and Johnson had repeatedly referred to those claims during the trial. The relationship between unsuccessful discrimination claims and pending retaliation claims can be confusing to judges and lawyers, let alone jurors. Giving the curative instruction to the

jury was probably wise and certainly was not an abuse of discretion.

IV.      *Rule 60 Motion for Relief From Judgment*

Johnson also sought and was denied relief from judgment under Federal Rule of Civil Procedure 60(b). Relief from judgment under Rule 60(b) "is an extraordinary remedy and is only granted in exceptional circumstances." *Willis v. Lepine*, 687 F.3d 826, 833 (7th Cir. 2012) (internal quotation omitted). The district court has broad discretion to deny motions for relief from judgment, and we review such denials only for abuse of discretion. *Nelson v. Napolitano*, 657 F.3d 586, 589–90 (7th Cir. 2011).

Johnson claims that her trial was permeated by judicial bias, and cites several examples of conduct that she claims showed prejudice against pro se litigants. We see no indication of bias. "Federal judges have wide discretion to determine the role that they will play during the course of a trial. A district judge is free to interject during a direct or cross-examination to clarify an issue, to require an attorney to lay a foundation, or to encourage an examining attorney to get to the point." *United States v. Washington*, 417 F.3d 780, 783–84 (7th Cir. 2005) (internal references omitted). The district court's occasional interjections during trial, the denial of some of Johnson's requests for sidebar conferences, and the other sundry events that Johnson identifies fall well within the district court's discretion to manage the trial.

The judgment of the district court is AFFIRMED.