NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 27, 2014[*]
Decided June 27, 2014

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 13-3703

| | |
|---|---|
| ANN LUMPKINS-BENFORD, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 11 C 6547 |
| ALLSTATE INSURANCE COMPANY, *Defendant-Appellee.* | Rubén Castillo, *Chief Judge*. |

**O R D E R**

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

Ann Lumpkins-Benford, a former customer-service agent at Allstate Insurance Company, appeals the grant of summary judgment for Allstate in this employment-discrimination lawsuit. She claims that she suffered race discrimination, a hostile work environment, and retaliation for reporting discrimination, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. We affirm.

Lumpkins-Benford, who is African American, began to suspect her employer of racial discrimination after Allstate employees gave inconsistent explanations for not paying her for two weeks of a three-week unscheduled absence in January 2011. As Lumpkins-Benford testified at her deposition, it was her understanding that she could use 28 days of paid leave in 2011, whether scheduled or unscheduled. But an employee in the timekeeping department told her that Allstate would not pay for unscheduled absences lasting more than one week unless they involved short-term disability or family-medical leave. A human-resources manager later gave a different explanation, saying that Lumpkins-Benford had accrued only two days of paid leave at the time of her absence. Lumpkins-Benford believed that this latter explanation was discriminatory because she knew of white coworkers who had used paid leave before earning it.

After telling the human-resources manager and Allstate's CEO in May 2011 that she planned to file a discrimination charge, Lumpkins-Benford came to believe that the company was retaliating against her. Days after sending her email, she arrived at the office to find a black balloon taped to her desk. All of her coworkers had received white, yellow, and blue balloons as part of an employee-recognition day sponsored by Allstate, so Lumpkins-Benford saw the black balloon as the company's way of singling her out and calling her a "nigger." One month later she learned that Allstate was paying only partially for the time (three out of eight hours) she studied continuing education materials required to maintain her state insurance license; in the past the company had given her unlimited study time. She filed her charge of discrimination in July 2011 and amended it in September to include retaliation, citing the black-balloon incident, the reduced study time, and an incident in August when she had been unable to use her security badge to open the door to the call center. She sued in September.

A couple years later, while this suit was pending, Allstate closed the call center where Lumpkins-Benford worked and offered all employees severance pay in exchange for waiving all claims against the company. The waiver given to Lumpkins-Benford specifically mentioned her pending suit. She declined to sign the waiver, believing that it too was retaliatory.

The company moved for summary judgment but failed to send the required notice explaining summary judgment to Lumpkins-Benford. *See* N.D. ILL. L. R. 56.2. The court spotted the oversight and sent the notice to Lumpkins-Benford, giving her 14 days to amend her statement of facts in light of a motion to strike filed by Allstate.

The district court granted summary judgment for Allstate. First, with respect to race discrimination, the court concluded that Lumpkins-Benford could not establish a prima facie case under the indirect method of proof because she could not show that she was meeting Allstate's job expectations given her unscheduled absence. Nor could she establish discrimination with circumstantial evidence because nothing linked the black-balloon incident to Allstate's decision four months earlier not to pay for all of her unscheduled leave. Next, regarding her claim of a hostile work environment, the court ruled that the balloon incident, while "troubling," was not severe or pervasive enough to alter the conditions of her employment. Although Lumpkins-Benford compared the balloon to a noose or burning cross, the court explained that "[b]urning crosses and lynchings are violent acts teeming with historical significance, and the Court declines to find the same hateful and ominous meaning in a balloon." Finally, concerning Lumpkins-Benford's retaliation claim, the court determined that (1) the black-balloon and security-badge incidents were not adverse employment actions, and (2) she had not provided evidence of a causal link between the filing of her race-discrimination complaint and the reduction in time allotted to complete her continuing education requirements. The court added that it found nothing retaliatory or otherwise unlawful about Allstate's decision to condition severance pay on her agreement to release all legal claims against it.

On appeal Lumpkins-Benford first asserts that the district court erroneously granted summary judgment on her racial discrimination claim in light of time records showing that her white coworkers used paid leave before they earned it. But the district court correctly concluded that this evidence did not suggest that Allstate discriminated based on race. As the court pointed out, there is no evidence that the company treated white employees differently. Like her white coworkers, Lumpkins-Benford used paid leave before accruing it, using five days in January 2011 despite having accrued only two. And she acknowledged that Allstate expected her to schedule her absences in advance (though the company never told her of its one-week limitation on unscheduled leave). Because no evidence shows that non-black employees were ever paid for more than a week's unscheduled absence, nothing in the record calls into question Allstate's non-discriminatory explanation that it refused to pay for the entire absence because it was unscheduled. *See Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 841 (7th Cir. 2014)

(unexcused absences provided non-discriminatory motive for adverse employment action); *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 982 (7th Cir. 2008) (same).

Next, concerning her hostile-workplace claim, Lumpkins-Benford asserts that the district court minimized the offensiveness of the black-balloon incident, which she continues to compare to burning crosses and nooses. But as the court explained, the assessment of an offensive incident is made from both an objective and a subjective viewpoint. *See Passananti v. Cook County*, 689 F.3d 655, 667–68 (7th Cir. 2012). A single offensive incident has to be very severe to create a hostile workplace, *Johnson v. General Bd. of Pension & Health Benefits of United Methodist Church*, 733 F.3d 722, 729–30 (7th Cir. 2013), and the court here rightly concluded that the balloon's alleged racial message did not rise to that level, *see Nichols v. Michigan City Plant Planning Dep't*, No. 13–2893, 2014 WL 2766776, at *4 (7th Cir. June 19, 2014) (one-time use of n-word directed at plaintiff insufficiently severe to establish hostile workplace); *Ellis v. CCA of Tennessee LLC*, 650 F.3d 640, 647–49 (7th Cir. 2011) (single incident where coworkers wore shirts displaying confederate flags did not rise to level of an objectively hostile workplace); *cf. Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 635–36 (7th Cir. 2009) (noose was objectively hostile because it conveyed threat of racial violence as "a visceral symbol of the deaths of thousands of African-Americans at the hand of lynch mobs"). Lumpkins-Benford points to other incidents that she saw as harassing, such as other timekeeping issues and the discontinuation of a work-from-home program, but the district court correctly explained that she did not provide any evidence suggesting that these actions were racially motivated, as required to establish a hostile-workplace claim. *See Zayas v. Rockford Mem'l Hosp.*, 740 F.3d 1154, 1159 (7th Cir. 2014); *Lucero v. Nettle Creek Sch. Corp.*, 566 F.3d 720, 731–32 (7th Cir. 2009).

Regarding her retaliation claim, Lumpkins-Benford maintains that the district court should have ruled that the severance waiver offered by Allstate was retaliatory because, unlike the waivers given to all other employees, it specifically listed her pending lawsuit. But an employer may ask employees to waive their right to sue in exchange for money, *see Ellis v. DHL Express Inc.*, 633 F.3d 522, 524–25 (7th Cir. 2011), and the district court correctly noted that Lumpkins-Benford offered no evidence questioning Allstate's explanation that it listed her case in order to clarify the consequences of her waiver. Lumpkins-Benford also points to other actions that she saw as retaliatory, such as the incidents over the security badge and diminished study time, but the district court properly concluded that she did not provide any evidence that the employees involved in these actions were aware of her complaint. *See Naficy v. Ill. Dep't of Human Servs.*, 697 F.3d 504, 513 (7th Cir. 2012). And in the absence of other evidence,

the court explained, "suspicious timing" was not enough to show retaliation. *See Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012).

Lumpkins-Benford also contends that Allstate's motion for summary judgment was untimely because it was filed more than "30 days after the close of all discovery." FED. R. CIV. P. 56(b). But the motion was properly filed on the deadline for dispositive motions set by court order.

Finally Lumpkins-Benford maintains that the district court should have strictly enforced local rules and denied Allstate's motion for summary judgment because the company failed to send her the required notice to pro se litigants. *See* N.D. ILL. L. R. 56.2. But the district court has broad discretion to excuse noncompliance with local rules, *see Edgewood Manor Apartment Homes, LLC v. RSUI Indem. Co.*, 733 F.3d 761, 770 (7th Cir. 2013), and the court exercised its discretion here by sending Lumpkins-Benford the notice and giving her additional time to amend her statement of facts.

AFFIRMED.