NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 12, 2014[*]
Decided November 24, 2014

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 14-1688

| | |
|---|---|
| JOE A. SEBRIGHT, JR., | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of Illinois, |
| | Western Division. |
| *v.* | |
| | No. 10 C 50025 |
| CITY OF ROCKFORD, et al., | |
| *Defendants-Appellees*. | Frederick J. Kapala, |
| | *Judge*. |

**O R D E R**

In this appeal Joe Sebright principally challenges the denial of his motion for a new trial on his claim that two Rockford, Illinois, police officers used excessive force in arresting him. *See* 42 U.S.C. § 1983. We conclude that the district court did not abuse its discretion in denying that motion.

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2).

Officers Erick Freese and Apostolos Sarantopoulos were dispatched to a house in Rockford after an anonymous caller reported that a man and woman were fighting on the front lawn. When Freese and Sarantopoulos arrived, several men were standing outside, but all but one of them moved indoors when they saw the officers. The officers thought another fight was brewing and followed the group inside. Sebright resisted when they tried to arrest him, and Sarantopoulos subdued him with a Taser. Another man also was arrested. After criminal charges against Sebright were dismissed, he sued Freese and Sarantopoulous (and the City of Rockford as indemnitor, *see* 745 ILCS 10/9-102). Sebright claimed that the officers had unlawfully entered the residence, which belonged to his father, and also used excessive force to effect his arrest. Sebright later voluntarily dismissed his claim that the entry was unlawful. His excessive-force claim proceeded to trial.

After the close of discovery, and only four days before the final pretrial conference, the defendants learned that Sebright planned to offer into evidence a recording of the 911 call his sister made after the Taser was used. The 911 call center is not part of the police department, and the defendants had not been aware of the call previously. Sebright's sister requested an ambulance because he was convulsing. Apparently she also told the operator—neither the recording nor a transcript was made part of the record—that the police officers were killing Sebright and that they were racist because the other man arrested is black (Sebright and the defendants are white). At the final pretrial conference, the defendants moved to exclude the recording because of its untimely disclosure, but the district court authorized Sebright to introduce it, so long as he made his sister available before trial to be further deposed about her call. Six days later, on the first day of trial, the defendants again moved to exclude the recording, this time on the ground that it was irrelevant and overly prejudicial. Once again the court authorized Sebright to introduce the recording, though only if he redacted his sister's accusations of racial prejudice. But later, after the defendants had objected anew that a foundation for the recording was not established, the district court changed course and excluded the entire recording. The court reasoned that Sebright had failed to timely disclose the recording to the defendants, *see* FED. R. CIV. P. 26(a)(1)(A)(ii), an omission that was not substantially justified or harmless, *see* FED. R. CIV. P. 37(c)(1). The court noted, however, that Sebright's sister still could testify about what she saw during his arrest, but Sebright did not call her.

When Sebright's attorney began cross-examining Freese, the lawyer tried asking about the officer's justification for believing that Sebright had committed a crime.

Defense counsel objected, arguing that the justification was irrelevant because Sebright had voluntarily dismissed his claim about the officers' entrance into the residence. The district court agreed with the defendants that the question whether there was probable cause to enter the residence no longer was relevant, but the court allowed Sebright to delve into the circumstances leading the defendants to focus on Sebright. (Freese had entered the residence uninvited when he saw through the open door that Sebright and the other man who was arrested were arguing.) The district court clarified that it would not instruct the jury about the legal issues of probable cause or exigent circumstances to enter the residence.

The jury returned a verdict in favor of the defendants. Sebright filed a motion for a new trial, *see* FED. R. CIV. P. 59, contending that the district court had erred in refusing to give a jury instruction on exigent circumstances and in denying him use of the 911 recording. The court saw no reason to disturb the jury's verdict and denied the motion.

On appeal Sebright first argues that a new trial should have been granted because the district court did not instruct the jury on the issue of exigent circumstances. As we read the record, however, it appears that Sebright's lawyer agreed with the district court that an instruction on exigent circumstances was unnecessary after he dropped his claim that the entrance into the residence was unlawful. So this contention arguably is waived. *See Williams v. Dieball*, 724 F.3d 957, 961 (7th Cir. 2013); *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 841 (7th Cir. 2010).

In any event, Sebright's argument lacks merit. He asserts that the jury should have been instructed that any use of force—even de minimis force—to effect an arrest after an unlawful entry into a residence (without a warrant or exigent circumstances) is per se excessive under the Fourth Amendment. Thus, he says, whether the officers were justified in entering the residence was relevant to the excessive-force analysis. But Sebright cites no authority supporting this argument, and a majority of circuits, including this court, have weighed in on this issue, agreeing that the lawfulness of an arrest is irrelevant to an excessive force analysis. *See Carlson v. Bukovic*, 621 F.3d 610, 621–22 & n.19 (7th Cir. 2010); *Snell v. City of York, Pa.*, 564 F.3d 659, 672–73 (3d Cir. 2009); *Papineau v. Parmley*, 465 F.3d 46, 61–62 (2d Cir. 2006); *Estate of Sowards v. City of Trenton*, 125 F. App'x 31, 41–42 (6th Cir. 2005); *Beier v. City of Lewiston*, 354 F.3d 1058, 1064 (9th Cir. 2004); *Bodine v. Warwick*, 72 F.3d 393, 400–01 (3d Cir. 1995); *but cf. Bashir v. Rockdale Cnty., Ga.*, 445 F.3d 1323, 1331–32 (11th Cir. 2006) (describing Eleventh Circuit rule that excessive force claim is subsumed in any claim of unlawful arrest). Because Sebright has not established that the district court's jury instructions inaccurately stated the law, he is

not entitled to a new trial on this basis. *See Johnson v. General Bd. of Pension & Health Benefits of the United Methodist Church*, 733 F.3d 722, 733 (7th Cir. 2013); *Commonwealth Ins. Co. v. Titan Tire Corp.*, 398 F.3d 879, 886 (7th Cir. 2004).

　　Sebright next argues that he should have been awarded a new trial because, in his view, the district court erroneously excluded from evidence the recording of his sister's 911 call. But Sebright did not make the recording part of the record on appeal, which is reason enough for us to reject this appellate claim. *See* FED. R. APP. P. 10(b)(2); *Hicks v. Avery Drei, LLC*, 654 F.3d 739, 743–44 (7th Cir. 2011); *Morisch v. United States*, 653 F.3d 522, 529 (7th Cir. 2011). We also have doubts, based on what we know of the content of the recording, about its relevance. But even apart from those concerns, we cannot conclude that the district court abused its discretion in excluding the recording as a sanction for the untimely disclosure. *See* FED. R. CIV. P. 37(c)(1); *Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012). Sebright disclosed the recording only days before the final pretrial conference, despite possessing it for *five years*. His only justification for withholding the recording was that he assumed the defendants had a copy, even though defense counsel did not mention the 911 call when Sebright's sister initially was deposed more than a year before trial. And even if this explanation is credible, Sebright has failed to explain how he was prejudiced by excluding the recording. *See Johnson*, 733 F.3d at 731 (explaining that harmless evidentiary errors do not warrant new trial); *Whitehead v. Bond*, 680 F.3d 919, 930 (7th Cir. 2012) (same). Sebright insists that the recording was crucial, but this contention is refuted by his choice not to call his sister to recount her observations during his struggle with the defendants.

　　Finally, Sebright argues that the district court erroneously "suppressed" testimony given by the defendants during his state criminal proceedings. Sebright does not say how this prior testimony would have been useful. Regardless, he never *offered* into evidence the defendants' prior testimony, and so there could not have been error. *See Molnar v. Booth*, 229 F.3d 593, 604 (7th Cir. 2000) (explaining that litigants cannot wait until appeal to raise concerns that could have been addressed by district court). In his reply brief, Sebright appears to clarify that he is referring to the defendants' motion in limine asking that the district court exclude any mention that the presiding judge in the state prosecution had found that probable cause to arrest Sebright was lacking. To the extent that Sebright disagrees with the court's ruling, he waived this argument by not opposing the motion in limine. *See Williams*, 724 F.3d at 961; *Fednav Int'l Ltd.*, 624 F.3d at 841.

　　　　　　　　　　　　　　　　　　　　　　　　　　　AFFIRMED.