In the

# United States Court of Appeals
## For the Seventh Circuit

No. 20-2882

MILDRED CHATMAN,

*Plaintiff-Appellant,*

*v.*

BOARD OF EDUCATION OF
THE CITY OF CHICAGO,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:18-cv-01328 — **Marvin E. Aspen**, *Judge.*

ARGUED MAY 11, 2021 — DECIDED JULY 20, 2021

Before EASTERBROOK, RIPPLE, and KANNE, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Mildred Chatman worked in the Chicago Public Schools for over two decades. In 2009, she was laid off. She then filed a discrimination charge against the Board of Education of the City of Chicago. That matter later settled. As part of the settlement, Ms. Chatman secured the opportunity to interview for open positions within the Chicago Public Schools. She interviewed for positions at several

schools, four of which are relevant to this appeal, but received no job offer. She brought this action, alleging race and age discrimination, as well as retaliation based on her prior discrimination charge. The district court granted summary judgment for the Board.

Ms. Chatman now contends that the district court erred in granting the Board's motion. We hold that it did not. Ms. Chatman's claims ultimately fail for a lack of proof. Even taking all reasonable inferences in her favor, the record cannot support her contention that the Board discriminated or retaliated against her. We therefore affirm the district court's grant of summary judgment to the Board.

## I

## BACKGROUND

Ms. Chatman, who is African American, was sixty-two years old when she commenced this action. From 1988 to 1996, she worked as an instructor assistant in two of the Board's schools. From 1997 through 2009, she worked as a school library assistant at a high school within the Chicago Public Schools. In August 2009, the Board laid off Ms. Chatman, informing her that it was eliminating her position. Ms. Chatman later learned that, despite the Board's claim that the position had been eliminated, the Board had replaced Ms. Chatman with a younger, non-African American employee in the same role.

Ms. Chatman filed a charge of discrimination with the Illinois Department of Human Rights and the EEOC, and then sued in Illinois state court. The Board settled with Ms. Chatman in February 2015. In addition to a monetary payment, the district would arrange for interviews for open positions for

which Ms. Chatman was qualified. Specifically, from the date of the settlement through December 31, 2015, "[Ms.] Chatman shall identify to [designated Board Talent Office employees] Chicago Public Schools positions that are vacant on the Board's … job bulletin system for which she would like to interview, for which she is qualified and for which the Board is currently accepting applications."[1] The Board would then arrange interviews. Ms. Chatman began identifying available positions shortly following the settlement agreement. All told, Ms. Chatman interviewed for positions at five different schools.

Her first interview was for a library assistant position at Beasley Academic Center in June 2015. On September 9, 2015, Ms. Chatman learned that the Board had filled that position with another candidate.

Ms. Chatman's second interview was for a teacher's assistant position at Earle Elementary. She stated in her deposition that she interviewed with the Earle principal on September 10, 2015, although she could not remember many details about the interview and could not explain why she thought the interview took place on that date. Ms. Chatman also submitted for the summary judgment record an email from Linda Hogan, one of the Board's Talent Office employees, to Ms. Chatman's counsel, dated September 10, 2015 (the same day that Ms. Chatman claims to have interviewed for the Earle position), stating that the Earle principal would contact Ms. Chatman to set up an interview. The record contains no other communications about Earle. Later, when the EEOC sought information from the Board about the Earle position,

---

[1] R.70-5 at 6.

the Board denied that there was an open teacher's assistant position at Earle during the time Ms. Chatman claims she interviewed.

Ms. Chatman's third interview was for a library assistant position at Mireles Academy. She interviewed for the position with Evelyn Randle-Robbins, the Mireles principal, in November 2015. During her deposition, Ms. Chatman claimed that Principal Randle-Robbins made some sort of reference to prior involvement in a lawsuit. Ms. Chatman could only vaguely describe Principal Randle-Robbins's question, but took it to be in reference to her prior EEOC charge against the Board. In the same deposition, however, Ms. Chatman confirmed that Principal Randle-Robbins never discussed the specifics of her prior discrimination case or the settlement agreement she reached with the Board. Ms. Chatman was not hired for the position. In response to the EEOC's inquiry, the Board claimed that the position for which Ms. Chatman interviewed at Mireles had been eliminated for budgetary reasons. The Board later disclosed that Principal Randle-Robbins had extended an offer to fill the position to another candidate, referred to in the record only by the initials K.D. K.D. accepted Principal Randle-Robbins's offer around November 30, 2015. Yet, K.D. never actually started working in the library assistant position before Principal Randle-Robbins eliminated the position for budgetary reasons in February 2016. K.D. was under the age of forty.

Ms. Chatman's fourth interview was with Principal Daniel Perry of McDade Elementary on December 2, 2015, for two open special education classroom assistant positions. Ms. Chatman was not hired for the positions. Instead, the Board hired an African American man who was under forty

years old and an African American woman who was over forty years old. In an affidavit, Principal Perry explained that the younger man hired for one of the positions was a McDade graduate who had volunteered at the school and worked with the specific special education student whom the special education classroom assistant would assist.

Ms. Chatman's final interview was on December 17, 2015, with Principal Megan Thole of Ray Elementary for three open special education classroom assistant positions. Ms. Chatman was not hired for these positions either. Instead, the Board hired two African American women over the age of forty and a non-African American woman under the age of forty. At the time of her interview, the non-African American woman under the age of forty did not possess the requisite paraprofessional license to fill the special education classroom assistant position. By the time she started in the position, however, she had obtained the license.

When Ms. Chatman did not receive a job offer during the interview period provided by the settlement, she filed a new charge with the EEOC, and later initiated this action. In her complaint, she alleged violations of Title VII's anti-discrimination and anti-retaliation provisions, as well as a violation of the anti-discrimination provision of the Age Discrimination in Employment Act ("ADEA"). After discovery closed, the Board moved for summary judgment. When Ms. Chatman responded to the Board's summary judgment motion, the Board moved to strike several exhibits that Ms. Chatman had cited in her response.

The district court granted the Board's motion for summary judgment and its motion to strike. The court concluded that Ms. Chatman's claims regarding the positions at Beasley and

Earle were barred by the statute of limitations. As for Ms. Chatman's discrimination claims regarding the positions at Mireles, McDade, and Ray, the court concluded that Ms. Chatman could not establish that she was qualified for the positions, nor could she establish that the Board's nondiscriminatory reasons for not offering her the positions were pretext for discrimination. With respect to the retaliation claim, the court concluded that Ms. Chatman could not establish that she was denied a job because of her prior protected activity.

## II

## DISCUSSION

Ms. Chatman challenges the district court's grant of both the Board's summary judgment motion and its motion to strike several exhibits. For purposes of this appeal, we assume that the district court erred in granting the Board's motion to strike. Even accounting for the stricken exhibits, summary judgment was still proper.

We review a district court's summary judgment decision de novo and draw all reasonable inferences in favor of the nonmoving party. *Smith v. Chi. Transit Auth.*, 806 F.3d 900, 904 (7th Cir. 2015). Ms. Chatman contends that the district court erred in granting summary judgment on her claims related to the positions at Earle, Mireles, McDade, and Ray; she concedes that her claim related to the Beasley position was untimely. We will first address the district court's determination that Ms. Chatman's Earle claim was untimely, then discuss her discrimination and retaliation claims regarding the positions at Mireles, McDade, and Ray.

**A.**

In a deferral state such as Illinois, a plaintiff who asserts Title VII and ADEA claims has 300 days from the alleged discriminatory or retaliatory act to file a timely charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e-5(e)(1) (Title VII statute of limitations); 29 U.S.C. § 626(d)(1)(B) (ADEA statute of limitations). A defendant may invoke a plaintiff's failure to timely file a charge with the EEOC as an affirmative defense. *See Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 921 (7th Cir. 2007). At summary judgment, a defendant who asserts this affirmative defense must show that there is no genuine dispute of material fact as to whether the plaintiff timely filed with the EEOC. *See Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473, 475 (7th Cir. 2009). The defendant can establish its affirmative defense in two ways. One is by pointing to evidence that affirmatively shows that the plaintiff failed to timely file. The other is by pointing to the absence of evidence in the record to support the plaintiff's timeliness. *See* Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ("[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."). If the defendant meets its burden by pointing out the absence of evidence, the plaintiff must then "demonstrate that there is evidence" upon which a jury could determine that she timely filed with the EEOC. *Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013).

Ms. Chatman contends that the district court erred in concluding that her Earle discrimination and retaliation claims were barred by Title VII's and the ADEA's statutes of limitations. In her view, the Board presented no evidence that her

claims accrued outside the 300-day limitations period. She also submits that the district court erred by focusing its analysis on the date of her interview at Earle (September 10, 2015), rather than the date that she learned of the Board's decision not to hire her. She contends that the record is unclear as to when the Board made its decision, and consequently, there is a disputed issue of material fact. The Board, on the other hand, contends that it met its burden of proof for the statute of limitations affirmative defense. It submits that there is no evidence in the record that shows any action by the Board related to Ms. Chatman's Earle claims within the 300-day window. Indeed, the Board contends that the only evidence in the record regarding Ms. Chatman's Earle claims is her deposition testimony that the interview happened in September 2015 and a single email from Linda Hogan to her counsel stating that the Earle principal would reach out to schedule an interview.

The district court correctly determined that Ms. Chatman's discrimination and retaliation claims regarding Earle are barred by the relevant statute of limitations. All agree that the statutory deadline for Ms. Chatman's claim was in November 2015. The Board has met its burden on the affirmative defense by pointing to the absence of anything in the record regarding Earle within the statute of limitations period. Ms. Chatman said in her deposition that she interviewed for the Earle position on September 10, 2015. She was uncertain of how she recalled that as the date of her interview and could not say definitively with whom she interviewed. She suggested that she may have emailed with someone about the Earle position after the interview, but no such email was uncovered during discovery. The Board, in its response to the EEOC's inquiry, wrote that the Earle principal "believes that

there was no vacant teacher assistant position at Earle School in September 2015."[2] And the individual who Ms. Chatman initially identified in her complaint as the person hired for the teacher assistant position at Earle was actually hired for a position at Beasley. There is an email from Linda Hogan to Ms. Chatman's counsel dated September 10, 2015, the date Ms. Chatman says she interviewed at Earle, stating: "The principal of Earle school will be contacting Ms. Chatman for an interview. Please let me know if she doesn't hear from him for some reason."[3] But there is no evidence of any follow-up communication between the Earle principal to Ms. Chatman.

Confronted with the Board's asserted absence of evidence of timeliness regarding the Earle claims, Ms. Chatman has not shown that there is any evidence that she timely filed with the EEOC. The little evidence in the record regarding the Earle position all arose over a month before the statutory deadline. Indeed, it is not clear from the record that there actually was an Earle teacher assistant position available or that Ms. Chatman interviewed with the Earle principal. Notably, Ms. Chatman chose not to depose the Earle principal—or any other principal involved in this case—and that decision has contributed, noticeably, to the sparse record. The lack of any documentation regarding the Earle position is particularly noteworthy because Ms. Chatman's settlement with the Board obligated her to identify open positions. That is why for other positions involved in this case she has been able to produce the position descriptions that the Board posted on its hiring

---

[2] R.86-1 at 45.

[3] *Id.* at 50.

website. Our case law makes clear that the statute of limitations is an affirmative defense and that if the "evidence [is] inconclusive at best, the tie must go to the plaintiff." *Salas*, 493 F.3d at 922. Here, the evidence that Ms. Chatman timely filed her Earle claim is not inconclusive; it is absent. We therefore must conclude that her Earle claim is barred by the statute of limitations.

**B.**

For Ms. Chatman's discrimination claims regarding Mireles, McDade, and Ray, the district court granted summary judgment on the merits. With respect to Mireles and McDade, Ms. Chatman raised only age discrimination claims. For Ray, Ms. Chatman raised a race discrimination claim and an age discrimination claim.

Title VII makes it unlawful for an employer "to fail or refuse to hire … any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Along the same lines, the ADEA makes it unlawful for an employer "to fail or refuse to hire … any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623. At summary judgment, the critical question is whether the plaintiff has produced enough evidence to permit a reasonable factfinder to conclude that the plaintiff's race or other proscribed factor caused the adverse employment action. *See Purtue v. Wis. Dep't of Corr.*, 963 F.3d 598, 602 (7th Cir. 2020) (quoting *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018)). To answer that question, we look at the evidence holistically. *See David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846

F.3d 216, 224 (7th Cir. 2017); *see also Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 766 (7th Cir. 2016) ("[A]ll evidence belongs in a single pile and must be evaluated as a whole.").

Employing the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), is one way that a plaintiff can assist the court in sifting through the evidence to assess whether discrimination under Title VII and the ADEA is established. *See O'Regan v. Arb. Fs., Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (applying the same *McDonnell Douglas* framework to Title VII and ADEA discrimination claims). Under that approach, the plaintiff must first produce evidence establishing a four-part prima facie case: "(1) she was a member of a protected class; (2) she applied for and was qualified for the position sought; (3) she was rejected for the position; and (4) the employer [hired] someone outside the protected group who was not better qualified than the plaintiff." *Johnson v. Gen. Bd. of Pension & Health Benefits of United Methodist Church*, 733 F.3d 722, 728–29 (7th Cir. 2013).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* at 728. For a failure-to-hire claim, one example of a legitimate, nondiscriminatory reason a defendant may offer is that "the individuals ultimately hired were better candidates" than the plaintiff. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 724 (7th Cir. 2018); *see also Scruggs v. Garst Seed Co.*, 587 F.3d 832, 839–40 (7th Cir. 2009) (explaining that, when hiring for a research assistant position, an employer had a legitimate, nondiscriminatory reason to select someone with experience as a research assistant for the company).

If the employer supplies a legitimate, nondiscriminatory reason, the burden then shifts back to the plaintiff to produce evidence that the defendant's reason is pretext for discrimination. *Johnson*, 733 F.3d at 728. In this context, pretext "means a lie, specifically a phony reason for some action." *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995). We have also referred to pretext as an employer's efforts to cover their tracks or hide their real reason for not hiring an applicant. *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (7th Cir. 2002). Yet, "a showing of pretext alone is not enough; the plaintiff must also show that the explanations are a pretext for the prohibited animus." *Hitchcock v. Angel Corps, Inc.*, 718 F.3d 733, 740 (7th Cir. 2013).

The district court concluded that Ms. Chatman had failed to establish a prima facie case; that the Board had supplied legitimate, nondiscriminatory reasons for hiring other candidates; and that Ms. Chatman had failed to show that those reasons were pretext for discrimination. Because we conclude that Ms. Chatman cannot show that the Board's reasons for not hiring her at Mireles, McDade, and Ray were pretext for discrimination, we limit our discussion to that issue. *Accord Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 473 (7th Cir. 2002) ("It is not always necessary to march through this entire process if a single issue proves to be dispositive. Here, as is often true, that issue is pretext or the lack thereof.").

For the library assistant opening at Mireles, the Board explained that it did not hire Ms. Chatman because it cut the position for budgetary reasons. *See Jajeh v. Cnty. of Cook*, 678 F.3d 560, 573 (7th Cir. 2012) (noting that budget cuts can provide a legitimate, nondiscriminatory reason for an adverse employment action). Ms. Chatman contends that, although

the Board provided a budgetary explanation, it also disclosed during discovery that Principal Randle-Robbins offered the job to K.D., who was under forty years old, before the position was later cut. That offer to K.D., Ms. Chatman submits, means that the Board's initial legitimate, nondiscriminatory reason for not hiring her was pretext. We cannot agree with Ms. Chatman's view. If anything, the evidence about K.D. cuts against Ms. Chatman's argument that the Board's budgetary reason was pretext for discrimination. Notably, K.D. never started in the role because the position really was eliminated. The Board's budgetary reason, therefore, is not a lie. *See Russell*, 51 F.3d at 68. Nor can Ms. Chatman persuasively assert that the Board's decision to eliminate the position was driven by discriminatory animus. After all, K.D. was much younger than Ms. Chatman and had no protected activity, yet the Board still eliminated the position after K.D. accepted Principal Randle-Robbins's job offer.

As for McDade, it is obvious that the Board's reason for selecting its chosen candidates was not pretext for discrimination against Ms. Chatman. Principal Perry hired an African American man who was under forty years old and an African American woman who was over forty years old to fill the two open special education classroom assistant positions. With respect to the younger hire, Principal Perry explained that the candidate was both a McDade graduate and had volunteered working with the specific special education student for whom the special education classroom assistant position was designed to assist. Ms. Chatman contends that she was more qualified than the younger hire and that the job posting said nothing about consideration of alumni status at the school. We see no basis to conclude that the Board's reason was pretextual. The younger hire may have had less formal training

than Ms. Chatman, but he had spent time volunteering at McDade alongside the very same special education student covered by the special education classroom assistant position. That sort of valuable experience is a perfectly legitimate consideration during hiring. *See Scruggs*, 587 F.3d at 839–40 (holding that consideration of hands-on experience relevant to the position is a legitimate, nondiscriminatory reason for hiring a candidate). And Ms. Chatman has offered nothing to suggest that Principal Perry's consideration of the younger hire's experience was phony or intended to cover up more nefarious motives.

We reach the same result regarding the Ray positions. There, Principal Thole hired two African American women over the age of forty and a non-African American woman under the age of forty. Principal Thole explained that the younger, non-African American candidate was hired for one of the positions because she had volunteered at Ray and came highly recommended by the teacher in whose classroom she had worked. The principal's reason is a legitimate, nondiscriminatory reason for her selection. *See id.* Ms. Chatman contends that the Board's explanation for why it hired the younger, non-African American candidate is pretext. She submits that among the Board's prerequisites for the position was a state paraprofessional license. At the time of the interview, the candidate at issue did not possess the license. Thus, she argues that the Board subjected that candidate to less rigorous standards than it applied to her. Again, Ms. Chatman has failed to establish pretext. She is correct that the younger, non-African American candidate did not possess the paraprofessional license at the time of her *interview*. But by the time that candidate started in the special education classroom assistant position, she had obtained the license. Thus, the

record reflects that possession of the license was an actual requirement of the job. Moreover, Ms. Chatman has done nothing to undercut Principal Thole's explanation that she considered the candidate's familiarity with the school and strong recommendation from one of Ray's teachers. In short, there is no basis to conclude that the Board's explanation for why it hired its chosen candidates was a lie.

Ms. Chatman's claims with respect to Mireles, McDade, and Ray fare no better when the evidence is analyzed without the assistance of the *McDonnell Douglas* burden-shifting framework. When we put the evidence in "a single pile" and evaluate it "as a whole" we cannot say that a reasonable jury could find that Ms. Chatman's age or race led to the Board's hiring decisions. *Ortiz*, 834 F.3d at 766. Where the Board hired other candidates, it provided clear, legitimate, and documented reasons why it chose other candidates. When the Board relied upon a budgetary reason, there is no evidence in the record to suggest that reason was a lie or a subterfuge for discrimination or retaliation. Put simply, Ms. Chatman's Title VII and ADEA claims regarding Mireles, McDade, and Ray fail for a lack of proof.

## C.

Ms. Chatman's final claim is under Title VII's anti-retaliation provision. She submits that the Board's decision not to hire her at Mireles, McDade, and Ray was in retaliation for her prior discrimination charge against the Board. The district court granted summary judgment for the Board on Ms. Chatman's retaliation claim. We agree with the district court's assessment.

To succeed on her retaliation claim, Ms. Chatman had to produce evidence that would allow a reasonable jury to conclude that: (1) she had engaged in a statutorily protected activity; (2) the Board refused to hire her; and (3) there was a causal connection between her activity and the Board's action. *See Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 695 (7th Cir. 2017). All agree that the first two prongs are met here; only the causation prong is contested. Causation for Title VII retaliation claims requires a plaintiff to show "but-for" causation. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). The plaintiff must show that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.*

For the Mireles position, Ms. Chatman contends that a reasonable jury could infer retaliation because Principal Randle-Robbins asked Ms. Chatman during the interview whether she had been involved in a prior lawsuit. Ms. Chatman submits that the reference was to her prior discrimination lawsuit against the Board, and that there was no reason why the lawsuit should have come up during the interview for the library assistant position. When the Board later offered the position to K.D., Ms. Chatman contends that the Board's decision was retaliatory because K.D. was less qualified and had not engaged in protected activity.

The Board responds that Ms. Chatman's description of Principal Randle-Robbins's reference to a lawsuit is far too ambiguous to support her retaliation claim. The Board points to how Ms. Chatman described the interview in her deposition: "[The principal] asked … I think questions had I ever had—did I know anything about lawsuits or suing or something to that nature, I can't specify exactly how she put it to

me, that made me think that, you know, she knew something about my case."[4] Thus, the Board contends that, even with a generous interpretation of Ms. Chatman's memory, the purported question is completely vague. That vague recollection, the Board submits, is not enough to establish but-for causation.

We agree with the Board's assessment of the evidence. Even when we draw all reasonable inferences in Ms. Chatman's favor, we still see no way for a reasonable factfinder to conclude that Ms. Chatman's protected activity was the but-for cause of her not being hired at Mireles. Ms. Chatman has marshalled no evidence that the Board's decision to eliminate the Mireles position for budgetary reasons was based on retaliatory motives. In any event, as we have noted earlier, K.D. engaged in no protected activity, yet the Board still cut the position for budget reasons. Ms. Chatman, therefore, cannot possibly establish that she would have been hired absent her prior protected activity.

The failure of Ms. Chatman's retaliation claims regarding the McDade and Ray positions is even more clear-cut. In each case, the principals wrote in their affidavits that they did not know Ms. Chatman had prior protected activity. Ms. Chatman claims that because Principal Randle-Robbins at Mireles knew about her lawsuit, every principal with whom she interviewed must have known also. We cannot credit such speculation. It is far from clear that Principal Randle-Robbins knew of Ms. Chatman's prior lawsuit. But more important, there is simply no evidence anywhere in the record that the principals at McDade and Ray had any knowledge of

---

[4] R.70-2 at 34.

Ms. Chatman's prior EEOC charge. Absent such evidence, no reasonable factfinder could conclude that those principals' decisions not to hire Ms. Chatman were retaliatory.

## Conclusion

Because Ms. Chatman's claim regarding Earle is barred by the statute of limitations and her claims regarding Mireles, McDade, and Ray fail for a lack of proof, we affirm the judgment of the district court.

AFFIRMED