2024 PA Super 237

| | | |
|---|---|---|
| KYRA L. GENELL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FLEETWOOD BANK | : | No. 1659 MDA 2023 |

Appeal from the Order Entered November 13, 2023
In the Court of Common Pleas of Berks County Civil Division at No(s):
21 14507

BEFORE:   PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    **FILED: OCTOBER 15, 2024**

Appellant, Kyra L. Genell, appeals from the order entered in the Court of Common Pleas of Berks County, which granted summary judgment in favor of Appellee, Fleetwood Bank, and dismissed Appellant's complaint in its entirety.  After a careful review, we affirm.

The relevant facts and procedural history are as follows: On October 4, 2021, Appellant filed a complaint against Appellee presenting two counts: Count 1-unlawful discriminatory practices under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951-963, and Count 2-violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* Specifically, Appellant averred that, on October 30, 2019, she began her

---

[*] Former Justice specially assigned to the Superior Court.

employment with Appellee as a financial services representative.  She alleged that, at the time she was hired, she informed Appellee that she has a disability.

During Appellant's employment, Appellee instituted various precautions, including requiring employees to wear face masks, in response to the COVID-19 pandemic.[1]  Appellant averred she suffers from a disability (intractable chronic migraines), and, thus, she is a member of a protected class under the PHRA and the ADA.  Appellant also averred her disability prevents her from wearing a face mask.  She alleged that she informed Appellee of her disability and inability to wear a face mask.  She also alleged that, upon Appellee's request, she provided Appellee with a note from her physician explaining her disability.

---

[1] We take judicial notice of the following: On March 6, 2020, Governor Wolf issued a Proclamation of Disaster Emergency regarding the novel COVID-19 pandemic. Thereafter, the Governor issued numerous orders designed to mitigate and stop the spread of COVID-19.  *See Corman v. Acting Secretary of Pennsylvania Department of Health*, 267 A.3d 561, 567-68 (Pa. Commw. Ct.), *aff'd*, 268 A.3d 1080 (Pa. No. 83 MAP 2021, December 10, 2021) (*per curiam* order); 266 A.3d 452 (Pa. 2021) (opinion explaining Court's reasoning for affirming).

Moreover, this Court recently recognized that a "reasonable interpretation of the science at the time [of the pandemic] was that masks inhibit the spread of COVID-19, especially in view of the CDC Guidelines in effect at the adoption of the [m]ask [m]andate, which expressed one scientific school of thought…." *Commonwealth v. Detwiler*, 313 A.3d 159 (Table), 2024 WL 50313, *6 (Pa.Super. Jan. 4, 2024) (unpublished memorandum). While this Court's decision in *Detwiler* is an unpublished memorandum, we may rely on it for its persuasive value. *See* Pa.R.A.P. 126(b) (stating we may rely on unpublished decisions of this Court filed after May 1, 2019, for persuasive value).

On or about July 1, 2020, Appellant was placed on unpaid administrative leave because she would not wear a face mask, and thirty days later, Appellee terminated her employment. Appellant alleged Appellee made no reasonable accommodations for her disability and terminated her in violation of the PHRA and the ADA.

On October 10, 2021, Appellee filed an answer with new matter, and the parties proceeded with discovery. On April 6, 2022, Appellant gave her deposition testimony. Specifically, Appellant testified she was diagnosed with chronic migraines in August of 2001, but she could not recall who made this diagnosis. Appellant's Deposition, dated 4/6/22, at 21. Appellant testified she has a migraine "every day," which lasts "most of the time." *Id.* at 23. She was currently controlling the migraine pain with Advil. *Id.* Regarding her symptoms, she indicated that "[o]ther than the localized pain, there is often vertigo, there's cognitive dysfunction, there's memory tiredness, there's nausea, and there can be abdominal pain, tiredness, tooth pain, [and] jaw pain, those are the highlights." *Id.* She noted that, most of the time, her pain is behind her right eye. *Id.* at 25.

Appellant indicated she has a high school diploma; however, she never attended college or technical school. *Id.* at 8. She has no occupational certifications or licenses. *Id.* Appellant testified she applied for the financial services representative position with Appellee in October of 2019. *Id.* at 19. She explained that the position was akin to being a bank teller, and "the idea

of being a teller…intrigued [her]." *Id.* at 18. On the employment application form, she marked the box next to "disabled." *Id.* at 21. She did not describe any specific disability on this form. *Id.* at 40.

On October 25, 2019, Appellant had a telephone interview with two of Appellee's representatives, and during the interview, she advised them that she suffers from "chronic migraines." *Id.* at 21. Appellant testified she "could not remember" whether, during the interview process, she advised Appellee as to how the chronic migraines impact her ability to work. *Id.* After the interview, Appellee offered her the job for which she applied, and she began working on October 30, 2019. *Id.* She explained that she was a bank "teller and [she worked with] either one or two managers." *Id.* at 33. She completed the required Human Resources documents when she began her employment; however, none of the forms pertained to a disability. *Id.* at 31. She clarified that, after she was hired by Appellee, she never completed any documents indicating she had a disability. *Id.*

Appellant testified she worked primarily at Appellee's bank facility in Lyon Station, Pennsylvania. *Id.* at 30-31. She noted that, during her employment with Appellee, she did not have to wear a headset, she did not wear her hair in a ponytail, she did not wear headbands, and she "very rarely" wore a hat. *Id.* at 34.

Appellant testified that, after Pennsylvania declared an emergency because of the COVID-19 pandemic in the spring of 2020, Appellee's bank

facility remained open as an essential business. *Id.* at 35. However, the bank lobby was closed and only the drive-thru was available for customers' use. *Id.* She noted that the drive-thru station at the Lyon Station branch has the capability for only one vehicle to transact business at a time. *Id.* Appellant testified that, during this time, she continued to work as a teller with one or two managers in the bank with her. *Id.* at 34. She testified a manager sometimes assisted her with the bank teller duties, but she "was the only one that was considered a teller." *Id.* The two managers had an office, which they shared if they were in the bank at the same time. *Id.* at 33-34.

When the bank lobbies closed during the spring of 2020 due to the pandemic, and only the drive-thru was available, Appellee asked "that everybody wear a mask." *Id.* at 36. Appellant acknowledged that, during this time, there was a "requirement for face coverings that went into effect in the State of Pennsylvania" and "a countrywide mask mandate that went into effect" because of the pandemic. *Id.* at 37, 40. She initially tried to comply. *Id.* at 36. Appellant clarified that she wore the "little paper mask," which was provided by Appellee, for approximately five days.[2] *Id.* at 37-38. After five days, she "just stopped wearing a mask" at work. *Id.* at 38. She did not attempt to use any different type of face covering or any other type of mask. *Id.* at 40. She testified that, when she wore the paper mask, her normal

---

[2] Appellant indicated the "little paper mask" was "like the surgical mask" used in physicians' offices. *Id.* at 37.

headache of a 2 or 3 on the pain scale increased to a 5 or 6 on the pain scale. *Id.* at 54.

She admitted that, as of this time, she did not have a physician's note seeking to exempt herself from Appellee's mask policy. *Id.* at 38. She also admitted she did not require additional medical treatment, take off work, or leave work early during the five days she wore the paper mask. *Id.* at 38-39. She testified that she was able to perform her job duties while she was wearing the paper mask. *Id.* at 55. However, she indicated she used more over-the-counter pain medicine, *i.e.*, Aleve, during this time. *Id.* at 39. She could not remember if she used any type of prescription medicine during the five days of mask wearing. *Id.*

Appellant testified that, after five days of wearing a face mask, she told her manager, Michelle Sanders, that she would not wear a face mask because "it was making [her] have more migraines." *Id.* However, she clarified it "was more of a casual conversation not [an] employee/employer kind of situation." *Id.* She admitted she did not contact anyone in the Human Resources Department to report that wearing a face mask was increasing the frequency of her headaches. *Id.* at 40.

She acknowledged that, on June 9, 2020, Appellee advised its bank branches that all employees would need to wear some type of face covering when the bank lobbies re-opened. *Id.* at 41. Appellant received this notice, and she contacted Trisha Gasdik in the Human Resources Department. *Id.*

While Appellant could not recall most of the specifics of her conversations with Ms. Gasdik, she indicated Ms. Gasdik "asked [her] to get a note from [her] neurologist regarding not being able to wear a mask." *Id.* at 42.

Appellant testified she provided a note wherein her physician indicated she could not wear a face mask. *Id.* at 43. Ms. Gasdik asked Appellant to get a physician's note indicating she also could not wear a face shield. *Id.* Appellant testified she complied and provided the requested physician's note to Ms. Gasdik on June 26, 2020. *Id.* at 44. Appellant indicated Ms. Gasdik then asked to speak to Appellant privately, and she informed Appellant that when the bank lobbies re-opened, Appellant would not be able to work in the bank because she wouldn't wear either a face mask or face shield. *Id.* at 45.

Appellant indicated that, at this time, no other alternatives were offered to her by Appellee regarding her employment, and she was not made aware of any other face coverings, aside from a mask and shield, which attached to her head. *Id.* When asked what accommodation she wanted, Appellant specifically testified that she wanted Appellee to let her continue working as a bank teller without wearing a face mask or face shield. *Id.* at 46. She explained that she should have been "exempted" because she provided Appellee with notes from her physician. *Id.* Appellant admitted she did not ask for any other type of accommodation. *Id.* at 45.

Near the end of June of 2020, Appellee re-opened the lobby at the Lyon Station location, so customers were permitted to enter the bank. *Id.* at 41.

Appellant would not wear a face covering, so she was immediately furloughed. *Id.* at 47. Appellant admitted that Ms. Gasdik told her to keep in contact with her, and sometime after July 1, 2020, Ms. Gasdik contacted Appellant to inform her that "a different kind of face shield had become available." *Id.* at 48.

Ms. Gasdik sent Appellant an email and photographs of the "new face shield." *Id.* Appellant responded it "was not a viable option." *Id.* During her deposition testimony, Appellant admitted the "different kind of face shield" at issue is one where a person wears a face shield with the plastic attachment on the shoulder area and not on the head. *Id.* at 49. Appellant admitted she summarily dismissed using this face shield without speaking to her physician. *Id.* Appellant testified Ms. Gasdik never told her that her employment was terminated, and she never spoke to Ms. Gasdik again after she refused to use the "different kind of face shield." *Id.* at 50.

From August of 2020 to February of 2022, Appellant never contacted Appellee in an effort to return to work. *Id.* She admitted that, even after the mask mandate was lifted, she did not attempt to return to work with Appellee. *Id.* She indicated she did not work at any other job until February 28, 2022, when she gained new employment as a clerk with the Berks County Assistance Office. *Id.* at 12.

She noted that, other than wearing the face mask for five days while at work, she did not generally wear any face mask or face shield during the

pandemic, even when she was out in public. *Id.* at 37. She admitted she was denied entry into several businesses because she would not wear a face covering. *Id.* She clarified that she wore a face mask "a couple times at the doctor's office for appointments, [and] when she flew on a plane…to Mexico." *Id.* at 56.

Tricia Gasdik also gave deposition testimony during discovery. She testified she began her employment as the Vice President of Human Resources for Appellee on May 19, 2020. Tricia Gasdik deposition, dated 12/8/22, at 7. At this time, Appellee's bank lobbies were closed to the public, and Appellee's policy was that employees must wear face masks if they were unable to socially distance from each other. *Id.* at 21. She indicated she had no personal knowledge of Appellant's performance history during her tenure with Appellee. *Id.* at 7. However, Ms. Gasdik indicated she had been informed that, prior to June 8, 2020, Appellant wore a face mask at work when she was unable to socially distance from other employees. *Id.* at 11.

On June 9, 2020, Appellant sent Ms. Gasdik an email advising her that she was unable to wear a face mask due to a disability. *Id.* Ms. Gasdik indicated Appellee was able to honor Appellant's request to not wear a face mask because the lobbies had not yet re-opened to the public, so customers were not allowed inside the building. *Id.* at 12. Ms. Gasdik instructed Appellant to practice social distancing and maintain a six-foot distance between herself and her co-workers. *Id.*

Ms. Gasdik confirmed that, based on the recommendations of the Centers for Disease Control ("CDC"), Appellee's executive team[3] decided to re-open its lobbies near the end of June 2020. *Id.* at 8. Also, based on the CDC's recommendations, Appellee's executive team provided notice that employees, as well as all customers entering the bank's lobbies, would be required to wear face masks after the lobbies re-opened. *Id.* Specifically, on June 15, 2020, Appellee's executive team made a formal announcement to employees that all branch lobbies would re-open on June 29, 2020, and all employees were to adhere to the CDC and Pennsylvania government's guidelines on wearing face masks. *Id.* at 9-10.

Ms. Gasdik testified that, on June 17, 2020, Appellant provided her with a physician's note stating that she was unable to wear a face mask due to migraines. *Id.* at 12. On June 18, 2020, Ms. Gasdik recommended to Appellant that she wear a face shield, which would attach around her head, instead of a face mask. *Id.* at 14. Ms. Gasdik testified she explored other options; however, there were no other options available. *Id.* She indicated she informed Appellant that Appellee would provide the face shield just as it did the face masks to employees. *Id.* at 15.

Ms. Gasdik then requested that Appellant ask her physician whether she could wear a face shield, and if not, to provide a note confirming she is unable

_____

[3] Appellee's executive team included the president/CEO, the chief financial officer, the chief retail officer, and the vice president of marketing. *Id.* at 8.

- 10 -

to wear a face shield. *Id.* In response, on or about June 26, 2020, Appellant provided an amended physician's note to Ms. Gasdik clarifying she could not wear either a face mask or a face shield. *Id.* Ms. Gasdik indicated the amended physician's note was difficult to read because it had been photocopied by Appellant. *Id.* Thus, Ms. Gasdik called Appellant on June 26, 2020, informed her she would be travelling to the branch where Appellant was working, and requested the original amended physician's note. *Id.* at 16.

When Ms. Gasdik arrived at the bank branch on June 26, 2020, Appellant gave her the original amended physician's note. *Id.* Ms. Gasdik then advised Appellant that "the bank could not have her working in a branch open to the public without a face covering[.]" *Id.* She indicated she specifically explained to Appellant that "this was per the CDC mandate to businesses." *Id.* She further explained to Appellant it was her duty to ensure that all employees and customers are kept safe under the mandates provided by the CDC and Pennsylvania government. *Id.* at 17. Ms. Gasdik indicated that, in response, "Appellant informed [her] that she would not consider try[ing to] wear a mask or face shield[.]" *Id.*

On that same day, June 26, 2020, the manager of the Lyon Station branch where Appellant typically worked reported to Ms. Gasdik that Appellant had informed her that she would not be returning to work the following day because "she [would] not wear a mask or a face shield[.]" *Id.* at 18. On July 1, 2020, Ms. Gasdik informed Appellant she was being placed on unpaid leave

for thirty days. *Id.* at 19. Ms. Gasdik indicated she placed Appellant on unpaid leave with the idea that other solutions might arise regarding protection from the COVID-19 pandemic and/or the CDC's guidelines might change such that employees did not need to wear face coverings when interacting with the public. *Id.*

Ms. Gasdik testified that, for a person with Appellant's educational level and skills, there were no "other positions that did not require her to wear [a] mask." *Id.* at 21. She explained that, prior to placing Appellant on unpaid leave, she considered whether there were any positions within the bank where Appellant could work without wearing a face covering while socially distancing, but there were no such positions available for Appellant. *Id.* at 24. She noted that, based on Appellant's educational level and experience, she was not qualified for "any of the back-office positions" where Appellant could work in an office and shut her door. *Id.* While some employees were permitted to work remotely, employees who worked directly in the bank's branches with customers, including financial services representatives/bank tellers, were unable to work remotely by nature of their job duties. *Id.* She testified Appellant did not have the experience necessary to work in any other position in the bank where she would not have to wear a face covering. *Id.* at 31.

Ms. Gasdik noted she texted Appellant during the month of July 2020 to inform her that, if she did not return to work, her employment would be terminated on August 1, 2020. *Id.* at 26. On August 3, 2020, Ms. Gasdik

discovered a new type of face shield, which did not attach to the head. *Id.* Rather, the face shield sat on the wearer's shoulders with the shield coming up from the shoulders to cover the face. *Id.* at 32. No part of this face shield attached to the wearer's head. *Id.* Ms. Gasdik emailed or texted Appellant on August 3 and 4, 2020, informing her about the new face shield and providing photographs of it. *Id.* at 27-32. She invited Appellant back to work. *Id.* However, she received no response from Appellant. *Id.* at 27-29. She noted the previous two emails from Appellant's physician indicated she could not "wear a mask or have anything touching her head[.]" *Id.* at 32. However, neither of the physician's notes indicated Appellant could not have anything on her shoulders. *Id.*

On February 22, 2023, Appellee filed a motion for summary judgment with a supporting memorandum of law. Therein, Appellee alleged Appellant did not have a disability under the PHRA or the ADA. Additionally, Appellee claimed that, even if Appellant had a disability, Appellant was not qualified to perform the essential functions of the job, with or without reasonable accommodation by Appellee. Further, Appellee averred that permitting Appellant to forego wearing a face covering while interacting with customers would have posed a direct threat to the health and safety of the customers, as well as Appellant and her co-workers, during the COVID-19 pandemic. Also, Appellee averred it offered Appellant reasonable accommodations

pursuant to the PHRA and the ADA, and Appellant rejected the reasonable accommodations.

On March 23, 2023, Appellant filed an answer in opposition to Appellee's motion for summary judgment, as well as a supporting memorandum of law. By order entered on November 13, 2023, the trial court granted Appellee's motion for summary judgment in favor of Appellee, and dismissed both counts of Appellant's complaint. This timely appeal followed on December 1, 2023. The trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement,[4] Appellant timely complied, and the trial court filed a responsive opinion.

On appeal, Appellant presents the following issues in her "Statement of Questions Involved" (verbatim):

> 1. Did the trial court err in granting the Appellee's motion for Summary Judgment as Appellant is disabled under the standards sets [*sic*] forth in the Americans with Disabilities Act and the Pennsylvania Human Relations Act?
>
> 2. Did the trial court err in granting the Appellee's motion for Summary Judgment despite Appellant having provided medical documentation demonstrating impairment and requesting a reasonable accommodation from Appellee?
>
> 3. Did the trial court err in granting the Appellee's motion for Summary Judgment as Appellant is otherwise qualified to perform the essential functions of the job, and prior to Appellee's refusal to accommodate Appellant, Appellant had fulfilled her job functions since the start of her employment with Appellee?
>
> 4. Did the trial court err in granting the Appellee's motion for Summary Judgment as Appellant suffered an adverse employment action as a result of her disability, such that Appellee refused to make reasonable accommodations for Appellant's

---

[4] The trial court's order complied with the requirements of Pa.R.A.P. 1925(b)(3).

disability and subsequently terminated Appellant from employment without notice?

5. Did the trial court err in granting the Appellee's motion for Summary Judgment as the COVID-19 pandemic did not alleviate the Appellee of its obligation to provide reasonable accommodations pursuant to the ADA and PHRA to Appellant after Appellee was made aware of Appellant's disability and a reasonable accommodation was requested?

Appellant's Brief at 5 (suggested answers omitted).

On appeal, Appellant raises various challenges to the trial court's application of the PHRA and the ADA. After a careful review, as discussed in greater detail *infra*, we find Appellant's third, fourth, and fifth issues, which are intertwined, to be dispositive.[5]

Initially, we observe that, in reviewing matters of summary judgment, we are governed by the following well-established principles:

> Our scope of review of an order granting summary judgment is plenary. We apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the

_____

[5] We note with disapproval that Appellant's argument sections as to her third and fourth issues are undeveloped without citation to any relevant authority. *See* Appellant's Brief at 20-22; *See also* Pa.R.A.P. 2119(b). Furthermore, as to the argument portion in support of her fifth issue, while Appellant cites generally to one section of the ADA, she has provided no other authority in support of her argument. *See* Appellant's Brief at 22-24; *See also* Pa.R.A.P. 2119(b). Moreover, Appellant failed to raise in her court-ordered Pa.R.A.P. 1925(b) statement the specific issue of whether the COVID-19 pandemic alleviated Appellee of its obligation to provide reasonable accommodations pursuant to the ADA and the PHRA. *See* Appellant's Pa.R.A.P. 1925(b) statement, filed 12/21/23. However, to the extent the issue is intertwined with whether Appellant was a "qualified individual" under the PHRA and the ADA, which Appellant raised in her Rule 1925(b) statement, we shall address the impact of the COVID-19 pandemic on the instant matter.

light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. ***Chenot v. A.P. Green Services, Inc.***, 895 A.2d 55, 60-61 (Pa.Super. 2006) (citation omitted).

Motions for summary judgment implicate the plaintiff's proof of the elements of [her] cause of action. ***Chenot***, 895 A.2d at 61 (citation omitted). Summary judgment is proper "if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa.R.C.P. 1035.2(2). In other words, "whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report," Pa.R.C.P. 1035.2(1), and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense. ***Chenot***, 895 A.2d at 61.

When reviewing a grant of summary judgment, we are not bound by the trial court's conclusions of law, but we may reach our own conclusions. ***Id***. We will disturb the trial court's order only upon an error of law or an abuse of discretion. "Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration." ***Chenot***, 895 A.2d at 61 (citation omitted). Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law, exercises its discretion in a manner lacking reason, or does not follow legal procedure. ***Id***. (citation omitted).

Where the discretion exercised by the trial court is challenged on appeal, the party bringing the challenge bears a heavy burden. It is not sufficient to persuade the appellate court that it might have reached a different conclusion if charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. ***Chenot***, 895 A.2d at 61 (citation omitted). An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias or ill-will,

as shown by the evidence or the record, discretion is abused. ***Id***. at 61-62 (citation omitted).

***Continental Cas. Co. v. Pro Machine***, 916 A.2d 1111, 1115-16 (Pa.Super. 2007).

In the case *sub judice*, Appellant raises claims of discrimination under the PHRA and the ADA. This Court has recognized that "[b]oth the [PHRA] and the [ADA] prohibit an employer from discriminating against an employee because of a disability." ***Imler v. Hollidaysburg American Legion Ambulance Service***, 731 A.2d 169, 172 (Pa.Super. 1999). "The PHRA and the ADA are interpreted in a co-extensive manner. This is because the PHRA and the ADA deal with similar subject matter and are grounded on similar legislative goals." ***Id.*** at 173 (citations omitted). Thus, "[w]hile we are not bound by federal courts' interpretations of parallel provisions of the [ADA], this Court may interpret the PHRA in accord with its federal counterparts." ***Stultz v. Reese Bros., Inc.***, 835 A.2d 754, 759 (Pa.Super. 2003) (citations omitted).

Under the PHRA, a person has a "handicap or disability" when he or she has: "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities; (2) a record of having such an impairment; or (3) being regarded as having such an impairment[.]" ***Imler***, 731 A.2d at 172-73 (quoting 43 P.S. § 954(p.1)(1)-(3)).

This Court has relevantly held:

A plaintiff establishes a *prima facie* case of disability discrimination under the PHRA by demonstrating: (1) that he or she is a disabled person within the meaning of the [PHRA]; (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she has suffered an otherwise adverse employment decision as a result of discrimination.

\*\*\*

The burden is on the plaintiff to prove that she is an otherwise qualified individual by means of a two-part test. A court must consider (1) whether the individual has the requisite skill, education, and other job-related requirements of the position sought, and (2) whether the individual, with or without reasonable accommodation, can perform the essential functions of that position.

*Jarmon v. Convent of the Sisters of St. Joseph Villa*, 240 A.3d 149 (Table), 2020 WL 4658904, \*4 (Pa.Super. Aug. 11, 2020) (unpublished memorandum) (quotation marks and quotations omitted).

Similarly, under the ADA, a "disability" is defined as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C.A. § 12101(2), **Definitions**.

Under the ADA, an employer is prohibited from discriminating against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C.A. § 12112(a), **Discrimination**. A "qualified individual with a disability" is defined by the ADA as a person "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C.A. § 12111(8), **Definitions**.

*Stultz*, 835 A.2d at 759-60 (bold in original).

Consequently,

Based on the statutory definitions, in order for a plaintiff to establish a *prima facie* case of discrimination under the ADA, [she] must demonstrate:

(1) [she] is a disabled person within the meaning of the ADA; (2) [she] is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [she] has suffered an otherwise adverse employment decision as a result of discrimination.

*Gaul v. Lucent Technologies*, 134 F.3d 576, 580 (3d Cir. 1998). The term "discrimination" in this context encompasses not only adverse employment actions driven by prejudice but also includes an employer's failure to make reasonable accommodations for the plaintiff's disabilities.[6] *Taylor v. Phoenixville School Dist.*, 184 F.3d 296 (3d Cir. 1999). Under the ADA, an employer discriminates against a qualified individual with a disability when the employer fails or refuses to "make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business." 42 U.S.C.A. § 12112(b)(5)(A), **Discrimination**.

*Stultz*, 835 A.2d at 759-60 (bold in original) (footnote added).

In the case *sub judice*, assuming, *arguendo*, Appellant's intractable chronic migraines meet the statutory definition of "disability" under the PHRA and the ADA, the issue becomes whether Appellant was otherwise qualified in

_____

[6] We note Appellant does not aver Appellee's "discrimination" encompassed any adverse employment actions driven by prejudice. Rather, she avers Appellee's "discrimination" resulted from its failure to make reasonable accommodations for her alleged disability.

June of 2020 to perform the essential functions of the job, with or without reasonable accommodation by Appellee. To reiterate, the burden was on Appellant, the plaintiff, to prove that she is an otherwise qualified individual by means of a two-part test. *Gaul*, *supra*. That is, to survive summary judgment, she must have set forth a *prima facie* case that: "(1) [she] has the requisite skill, experience, education and other job-related requirements of the position sought, and (2) [she], with or without reasonable accommodation, can perform the essential functions of that position." *Turner v. Hershey Chocolate USA*, 440 F.3d 604, 611 (3d Cir. 2006) (citation omitted). *See Walton v. Mental Health Ass'n of Southeastern Pennsylvania*, 168 F.3d 661 (3d Cir. 1999) (holding the plaintiff bears the burden of proving that she is otherwise qualified; if an accommodation is needed, the plaintiff must show, as part of her burden of persuasion, that an effective accommodation exists that would render her otherwise qualified).

Appellant does not dispute that Appellee instituted a valid safety protocol, which required employees to wear a face mask, when the bank re-opened its lobbies to the public during the COVID-19 pandemic in June of 2020. Further, she does not dispute that, after she informed Appellee that she could not wear a face mask, Appellee advised Appellant that it would provide Appellant with a face shield. However, Appellant avers she rejected

the offer of a face shield because her disability prevented her from wearing any face covering.[7]

Accordingly, Appellant claims Appellee should have accommodated her request to allow her to work as a bank teller without a face covering, even after the lobbies re-opened in June of 2020.[8] She contends Appellee's failure to do so was not a reasonable accommodation. Thus, she avers she set forth a *prima facie* claim that she was qualified to perform the essential functions of her employment with reasonable accommodation provided by Appellee. We disagree.

During her deposition, Appellant specifically testified the only "reasonable accommodation" that she sought was exemption from Appellee's face mask policies. She admitted she wanted Appellee to let her continue

_____

[7] We note it is undisputed that in June of 2020 Appellee offered to permit Appellant to wear an employer-provided face shield, which attached to the wearer's head. Appellant rejected this offer based on her disability. It is also undisputed that Appellee offered to permit Appellant to wear an employer-provided face shield, which sat on the wearer's shoulders. However, Ms. Gasdik admitted this accommodation was offered after Appellant's employment was terminated on August 1, 2020. In any event, Appellant testified that she rejected/would have rejected the shoulder-attached face shield because it was not an option for her disability.

[8] In her appellate brief, Appellant suggests that Appellee could have provided her with other reasonable accommodations, such as remote work or a position in a back office. We dispose of this bald assertion by noting that Appellant did not present any evidence in her deposition or otherwise contradict Ms. Gasdik's testimony that Appellant was a bank teller, who worked with the public, and she was not qualified for any positions that would have allowed her to work remotely or in her own office. Accordingly, there is no genuine issue of material fact in this regard.

working as a bank teller, even after the lobbies re-opened in June of 2020, without wearing a face mask or face shield. *Id.* at 46. She also specifically admitted she did not ask for any other type of accommodation other than being exempted from wearing a face covering. *Id.* at 45.

Ms. Gasdik testified that an essential function of Appellant's duties as a bank teller was to work with customers in the lobby, and Appellant offered no evidence disputing this fact. Ms. Gasdik testified that for a person with Appellant's educational level and skills, there were no "other positions that did not require [Appellant] to wear a mask." *Id.* at 21. Appellant offered no evidence disputing this fact. Ms. Gasdik explained that, prior to placing Appellant on unpaid leave, she considered whether there were any positions within the bank where Appellant could work without wearing a face mask or face shield while socially distancing, but there were no such positions available for Appellant. *Id.* at 24. Appellant did not offer evidence disputing this testimony.

Ms. Gasdik noted that, based on Appellant's educational level and experience, she was not qualified for "any of the back-office positions" where Appellant could work in an office and shut her door. *Id.* While some employees were permitted to work remotely, employees who worked directly in the bank's branches with customers, including financial services representatives/bank tellers, were unable to work remotely by nature of their job duties. *Id.* She testified Appellant did not have the experience necessary

to work in any other position in the bank where she would not have to wear a face mask or face shield.  *Id.* at 31.  Appellant did not offer any evidence disputing Ms. Gasdik's testimony in this regard.

Based on the undisputed material facts, we conclude that no reasonable jury could find that a reasonable accommodation, beyond the offered face shield, was available. *See Kinney v. St. Mary's Health, Inc.*, 76 F.4th 635 (7th Cir. 2023) (holding where employee with anxiety disorder would not wear a mask during COVID-19 pandemic where she interacted with public she could not be reasonably accommodated and was not qualified to do her work).  In a case similar to the one at bar, in a published opinion, the federal court's Seventh Circuit relevantly indicated the following:

> The ADA provides employment protections to individuals with disabilities who can perform the essential functions of a job so long as their employer makes a reasonable accommodation for them.  42 U.S.C. § 12111(8).  [The plaintiff in this case] sought to be excused from doing her work in person with a face mask for protection of herself and others from infection.  When an employee seeks to be excused from complying with an employer's safety requirement, courts can look at the issue in a couple of different ways, both in terms of whether the employee is qualified to do the work and whether a particular proposed accommodation would be reasonable.
>
> Under the ADA, an employee who cannot comply with a valid safety requirement for her position will "not be considered 'qualified.'"  As with all reasonable accommodation cases, we do not merely accept the employer's assertion that the claimed job requirement is in fact essential.  We must ask whether a reasonable accommodation would allow the employee to perform her job in compliance with legitimate safety requirements.  This was the approach laid out in a well-reasoned (although nonprecedential) decision by the Fourth Circuit.  *Holmes v. General Dynamics Mission Systems, Inc.*, 835 Fed. Appx. 688, 691-92 (4th Cir. 2020) (affirming summary judgment for

employer where employee could not wear steel-toed boots due to disability; fact that plaintiff had worked without such boots for years without incident did not render her a qualified individual).

> Like the plaintiff in **Holmes**, [the plaintiff in the instant case] does not dispute that the employer's safety protocol at issue was a valid job requirement….When COVID-19 safety precautions, including wearing a mask in the hospital, went into place, it became apparent that [the plaintiff] was not a qualified individual for her position and that she was seeking an accommodation that would not be reasonable under the circumstances. She was not able or willing to perform the in-person work that was essential to her position while wearing the personal protective equipment that her job required.

**Kinney**, 76 F.4th at 642-43 (citations and emphasis omitted).[9]

Similarly, in the case *sub judice*, after the bank's lobbies re-opened, Appellant sought to be excused from doing her work in-person without complying with Appellee's valid safety requirement of wearing a face mask (or face shield) for the protection of herself and others from infection. She provided no evidence disputing Ms. Gasdik's testimony that the essential functions of her job as a bank teller required her to work in the bank lobby with customers, as opposed to remotely, and she was not qualified for any of

---

[9] **See Voigt v. Fluor Marine Propulsion, LLC**, No. 21-378, 2024 WL 555088 (W.D.Pa. Feb. 12, 2024) (unpublished memorandum) (holding the plaintiff, who averred he suffered a disability and could not comply with the employer's mask mandate imposed during the pandemic, failed to identify a reasonable accommodation that would have allowed him to perform the essential functions of his job, thus he failed to set forth a *prima facie* case of discrimination under the ADA). While this is an unpublished federal court decision, we cite to it for its persuasive value. **In re Stevenson**, 615 Pa. 50, 40 A.3d 1212 (2012) (holding pronouncements of lower federal courts are non-binding on the Pennsylvania appellate courts but may be cited for persuasive value).

the "back-office positions" where she would have an office with a door capable of being shut to others. Simply put, Appellant's proposed accommodation of not wearing a face mask or face shield would not allow her to perform her job in compliance with legitimate safety requirements set forth by Appellee, her employer.

Since no reasonable accommodation would have allowed Appellant to perform the essential functions of her job, no reasonable jury could have found that she was a qualified individual under either the PHRA or the ADA. ***See Stultz***, ***supra***; ***Imler***, ***supra***. In sum, the trial court properly granted Appellee's motion for summary judgment on Appellant's claims of discrimination under the PHRA and the ADA.

Order affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>10/15/2024</u>